# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| CGB DIVERSIFIED SERVICES, INC., | )<br>) |
| Plaintiff, | )<br>) |
| | ) Case No. |
| v. | )<br>) |
| JEFF BAUMGART, | ) JURY TRIAL DEMANDED<br>) |
| Defendant. | ) |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

CGB Diversified Services, Inc. ("Diversified"), by its undersigned counsel and for its Complaint for Injunctive Relief and Damages against Defendant Jeff Baumgart ("Baumgart"), states as follows:

## NATURE OF ACTION

1. Diversified brings this action to address the actual, imminent, and continued irreparable harm resulting from Baumgart's unfair and unlawful competition using Diversified confidential and proprietary information and trade secrets.

2. Baumgart was Diversified's National Marketing Manager and was employed by Diversified for more than 18 years. In that capacity, he was trusted with Diversified's confidential and proprietary information and trade secrets, including, but not limited, to the company's most sensitive strategic information about detailed marketing plans and customer and agent development and retention. While employed by, and despite receiving pay and benefits from, Diversified, Baumgart acted in concert with three other Diversified employees, Kane Adams ("Adams"), Michael Gauer ("Gauer"), and Rich Morrison ("Morrison") (against each of whom Diversified has brought or will be bringing actions), to plot their departure from Diversified and

1

to work on behalf of direct competitor of Diversified, NAU Country Insurance Company ("NAU"). Baumgart conspired with NAU and the other Diversified employees to maximize the harm they would attempt to cause Diversified. As part of those discussions and to secure the defection of Diversified customers, agents, and employees, Baumgart used and disclosed Diversified's proprietary and trade secret information. Immediately before his sudden resignation, Baumgart destroyed all data on his Diversified computer, both destroying important and unique Diversified information and materials as well as attempting to hide the pre-departure activities that he had engaged in behalf of himself and NAU, rather than Diversified. As a result of Baumgart's actions, Baumgart has significantly interfered with and harmed Diversified, and absent relief from this Court, he will continue to interfere with Diversified's continued relationship with its policyholders, agents, and employees.

3. Diversified has spent substantial time, effort, and resources in developing the very confidential and proprietary information and trade secrets that Baumgart misused. Additionally, this information is sufficiently secret to derive economic value from not being known to other persons who can obtain economic value from its disclosure and use, and Diversified takes reasonable measures to safeguard the secrecy of this information.

4. On information and belief, Baumgart has derived economic value from his improper use of Diversified's confidential and proprietary information and trade secrets for himself and NAU.

5. Baumgart's intentional, willful and egregious misconduct includes, but is not limited to, violations of the following: (i) the federal Defend Trade Secrets Act and Missouri Uniformed Trade Secrets Act; (ii) Baumgart's non-competition/non-solicitation/non-recruitment agreement with Diversified; and (iii) Baumgart's fiduciary duties. Diversified therefore brings

this complaint for injunctive relief to avoid further harm and seeks monetary damages sufficient to compensate Diversified for the harm done already.

## PARTIES

6. Diversified is a Louisiana corporation with its principal place of business in Lenexa, Kansas.

7. Baumgart is an individual who resides in Cape Girardeau, Missouri.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because one of Diversified's claims arises under 18 U.S.C. § 1831 *et seq*., the federal Defend Trade Secrets Act of 2016. This Court has supplemental jurisdiction over Defendants' remaining claims pursuant to 28 U.S.C. § 1367.

9. The Court has general personal jurisdiction over Baumgart because he is a citizen of Missouri. This Court also has specific personal jurisdiction over Baumgart because one or more acts at issue occurred in this jurisdiction.

10. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391 because Baumgart lives in this judicial district, and a substantial part of the events giving rise to the claims occurred in this district and in this division.

## BACKGROUND

*Diversified*

11. Diversified is a managing general agent and underwriter of crop insurance. Crop insurance protects farmers in the event that they are unsuccessful in producing acceptable crops as a result of certain events such as hail, drought, or other unanticipated events.

12. Diversified is a company with operations in Jacksonville, Illinois and customers in several states, including Missouri. Like other businesses in the crop insurance industry, Diversified contracts with sales agents to sell crop insurance policies to farmers.

13. Farmers may place policies directly with Diversified, through its team of sales agents or through an independent agent or agency.

14. In the course of its business, Diversified stores and secures confidential information and trade secrets in a variety of ways depending on their nature and scope. Some materials are stored in electronic databases, or on computers or other devices, with restricted access based on an employee's or management's need to access information. Even within these databases employees, and even management may have only limited access to certain fields or portions of data. Indeed, the crop insurance industry is a governmentally regulated industry, so, in some instances, additional safeguards like Baumgart's agreement with the company also are utilized.

15. Diversified relies on trade secrets, other confidential information, and proprietary methods and processes in developing and marketing its crop insurance. Diversified has spent years cultivating relationships and working with its customers to identify and implement strong protections based on each farmer's needs. It also has invested substantial resources developing business models, analytics risk analyses, and other indices to estimate indemnities, profit, loss, and other critical and proprietary information regarding its crop insurance business. Diversified's relationships, confidential information, and trade secrets give Diversified an advantage over its competitors.

*Jeff Baumgart*

16. On information and belief, Baumgart currently resides at 170 Broyles Lane, Cape Girardeau, Missouri 63701.

17. Baumgart began working at Diversified in or about May of 2001.

4

18. As a condition of his Diversified employment, on May 31, 2001, Baumgart signed a Customer Non-Solicitation, Non-Compete, and Confidentiality Agreement (the "Agreement"). A true and correct copy of the Agreement is attached as **Exhibit A**.

19. As Diversified's National Marketing Manager, Baumgart reported directly to the President of Diversified. Baumgart was responsible for, among other things, the overall strategy of the marketing services provided to Diversified's agents, and customers. He also assisted his direct reports with the same duties. Consequently, as part of the needs of his employment, Baumgart was given access to Diversified's strategy for marketing, pricing, and sales, agent communication, customer and agent services, and customer information and profiles.

20. Diversified issued Baumgart a Microsoft Surface laptop and iPhone for his use when conducting Diversified business.

21. On information and belief, Baumgart stored a substantial number of documents and other files locally on his Diversified devices.

22. Much of the information that Baumgart was given access to and used to do his job as National Marketing Manager is closely held by Diversified and is restricted such that not all employees have access to this information. Diversified protects this information because it is the product of years of data analysis and customer management, and includes internal financial and risk information and integral in developing its marketing strategy. Baumgart would not have had access to this information but for his employment as the National Marketing Manager.

23. Over Baumgart's time as the National Marketing Manager, Diversified made large investments in Baumgart other than his salary, offering Baumgart extensive resources for use in cultivating Diversified's national marketing strategy. Through Diversified's investment and the

access provided to him in the course of his employment, Baumgart became familiar and built relationships with Diversified's agents, customers, and employees.

*The Agreement*

24. Precisely because of his exposure to highly confidential and commercially sensitive information in his role as a National Marketing Manager, Baumgart was required to sign the Agreement to restrict the potential disclosure of Diversified's confidential information and trade secrets, to protect this information generally and also in the event that Baumgart left Diversified.

25. Baumgart executed the Agreement on May 31, 2001. *See* **Exhibit A**.

26. In the Agreement, Baumgart acknowledged and agreed that as long as Diversified or its affiliates or subsidiaries offered its crop insurance, grain marketing services, or grain hedging or brokerage services:

> [D]uring his employment and for a period of one (1) year commencing on the last date of employment with the Employer, he/she will not, on his/her behalf or on behalf of any other person, firm or corporation, call on any of the Diversified Services or Consolidated Grain and Barge Co. customers, or any of its affiliates or subsidiaries for the purpose of soliciting crop insurance, grain marketing services, or grain hedging or brokerage services and/or providing to any of these customers any customer information relating to the [Diversified]'s services, nor will the Employee in any way, directly or indirectly for himself/herself, or on behalf of any other person, firm or corporation, solicit, divert or take away any customer of the Employer, its affiliates or its subsidiaries. (Ex. A ¶ 6.)

27. Baumgart further acknowledged and agreed that both during his employment and for a period of one (1) year after a discharge for cause or voluntary termination of employment he

> will not, on behalf of himself/herself, or on behalf of any other person, firm or corporation, solicit any of the employees of [Diversified] or any of its affiliates or subsidiaries nor will he/she in any way, directly or indirectly, for himself/herself or on behalf of any other person, firm or corporation, solicit, divert or take away any employees of the [Diversified], its affiliates or its subsidiaries. (Ex. A ¶ 7.)

28. Baumgart further acknowledged and agreed that both during his employment and for a period of one (1) year after a discharge for cause or voluntary termination of employment, he

6

"will not engage in any employment or consulting with any company or his own company within the same industry as CGB Diversified Services, Inc., within the counties Alexander, Johnson, Union, Jackson, Perry and Williamson in the state of Illinois, Dunklin, Pemiscot, New Madrid, Mississippi, Stoddard, Scott, Bollinger, Cape Girardeau, and Perry in the state of Missouri, and Clay, Green, Mississippi, and Craighead in the state of Arkansas." (*Id.* ¶ 8.)

29. Thus, Baumgart agreed in the Agreement that, both during his Diversified employment and for a period of one year following the termination of his employment with Diversified, he would not work for any competitor of Diversified or solicit Diversified's customers. (*Id.* ¶ 6).

30. Additionally, in the Agreement, Baumgart also agreed and acknowledged that:

 a. He would "have access to and be provided with certain confidential and proprietary business information, including, but not limited to, client and customer information, customer lists, and pricing information, all of which are of substantial value to [Diversified] in its business" (*Id.* at ¶ 5);

 b. A breach of the Agreement would irreparably harm Diversified such that "the remedy at law would be inadequate" and Diversified "shall be entitled to an injunction restraining such breach, attorneys' fees, and any other remedy provided by law" (*Id.* ¶ 11);

 c. His "right to compete has been limited only to the extent necessary to protect [Diversified] from unfair competition" (*Id.* ¶ 6);

 d. "If this restrictive covenant's scope or enforceability is disputed, a court or other trier of fact may modify and enforce the covenant to the extent necessary to be reasonable under these circumstances" (*Id.* at ¶ 6); and

> "In the event that a provision in this Agreement is declared to be illegal or invalid by any court of competent jurisdiction, the validity of the remaining parts, terms or

provisions shall not be affected thereby, and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement." (*Id.* ¶ 4).

***Baumgart Acts Contrary to the Business Interests of Diversified While Employed***

31. Notwithstanding the promises he made in his Agreement, Baumgart, working in concert with at least Adams, Morrison, and Gauer, and persons affiliated with NAU, engaged in improper conduct while Baumgart and those other Diversified employees remained employed by Diversified.

32. On January 22, 2020, Baumgart downloaded approximately 27 applications from the Diversified file management system to his Diversified laptop. As noted below, because Baumgart intentionally reset his laptop before returning it, thereby destroying all data on the laptop including data regarding its use, it is not possible solely from examination of the laptop to determine what Baumgart did with these applications that he downloaded two days before his sudden resignation.

33. On information and belief, during his Diversified employment, Baumgart used Diversified's trade secret, confidential and/or proprietary information to solicit Diversified's customers in the crop insurance industry for the benefit of NAU

34. On information and belief, prior to the termination of his Diversified employment, Baumgart engaged in actions directly against the business interests of, and in competition with, Diversified.

35. Baumgart abruptly resigned his position at Diversified on January 24, 2020. Adams, Gauer, and Morrison, three other Diversified employees working in concert with Baumgart, also suddenly resigned within minutes of Baumgart.

36. On information and belief, at about 7:00 PM Central Time, on the evening before terminating his employment, Baumgart performed a factory reset of the Microsoft Surface laptop issued to him for use as a Diversified employee.

37. By performing a factory reset of his laptop, Baumgart destroyed any and all Diversified information and documents stored locally on the device.

*Baumgart Poses a Serious Competitive Threat to Diversified*

38. Notwithstanding the promises he made in his Agreement, Baumgart, working in concert with at least three other Diversified employees and persons affiliated with NAU, is improperly competing against Diversified.

39. On information and belief, Baumgart is currently employed by NAU as its Senior Vice President of Strategic Marketing.

40. On information and belief, Baumgart, working in concert other persons affiliated with NAU, conspired to convert Diversified customers to NAU customers.

41. On information and belief, continuing to the present, Baumgart intends to use Diversified's trade secret, confidential and proprietary information to solicit and service, for the benefit of NAU, Diversified's customers in the crop insurance industry.

42. Baumgart has shown that he intends to solicit Diversified's customers—customers whose identity, needs, and strategic approach, he learned and cultivated while at Diversified—and to compete with Diversified using information that he improperly took from Diversified.

43. Baumgart poses a particular competitive threat to Diversified, not merely because he knows Diversified's trade secrets, but because he developed relationships with a significant number of Diversified's agents, customers or potential customers, and employees on the strength of Diversified's goodwill, products and services in his role as National Marketing Manager.

9

44. Baumgart has shown that he intends to harm Diversified's relationship with its customers and to compete with Diversified using information that he improperly took from Diversified.

**COUNT I**

**Breach of the Customer Non-Solicitation, Non-Compete,
and Confidentiality Agreement**

45. Diversified repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

46. The Agreement is valid and enforceable and imposes upon Baumgart specific contractual obligations.

47. Diversified has complied with all material terms of the Agreement.

48. Baumgart has breached the terms of Agreement by the conduct described herein, including, but not limited to, directly or indirectly soliciting Diversified employees by acting in concert with three other Diversified employees and persons affiliated with NAU to plot the Diversified employees' departure from Diversified and to work on behalf of direct competitor of Diversified, NAU Country Insurance Company ("NAU").

49. Baumgart has breached the terms of Agreement by the conduct described herein, including, but not limited to, by directly or indirectly soliciting Diversified customers on behalf of his current employer, NAU.

50. Baumgart has breached the terms of the Agreement by the conduct described herein, including but not limited to performing a factory reset of his Microsoft Surface laptop issued to him for use as an employee of Diversified, destroying all locally stored Diversified documents and information on the device.

51. As Baumgart agreed in the Agreement, if he is not enjoined from this unfair competition, and, in violation of his Agreement, any remedy at law will be inadequate, and Diversified will be irreparably injured.

52. In view of the similarity between Baumgart's job at Diversified and the role he is performing on behalf of NAU, he will inevitably make use of and/or disclose Diversified's trade secrets and other confidential and proprietary information in working on behalf of NAU.

53. In these circumstances, Diversified is entitled to an injunction to prevent such irreparable injury. Diversified is also entitled to recover money damages, including for misconduct that preceded the entry of an injunction.

## COUNT II

### Misappropriation of Trade Secrets
### Under 18 U.S.C. § 1832, the Defend Trade Secrets Act ("DTSA")

54. Diversified repeats and realleges, as if fully set forth herein, the allegations of Paragraphs 1 through 44 above.

55. Diversified possesses certain valuable trade secrets and confidential information, including, without limitation, information about crop insurance and Diversified's customers, sensitive strategic information about detailed marketing plans, insurance product development, risk analysis, and customer and agent development and retention, all of which constitute trade secrets under federal law as embodied in 18 U.S.C. § 1832 *et seq*. These trade secrets provide independent economic value by virtue of not being known to and not being readily ascertainable by proper means by other persons who could obtain economic value from the disclosure of such information.

56. Diversified is incorporated in Louisiana and uses its trade secrets and confidential information in certain services that are subject to federal regulation and provides that information

to farmers across the country, including in Missouri and other states. As such, the trade secrets at issue and Diversified's claims are related to products and services used in interstate commerce.

57. Baumgart is familiar with these trade secrets and confidential information by virtue of his role at Diversified, and thus Baumgart has a statutory duty under the DTSA not to disclose or use this information outside of Diversified.

58. On information and belief, Baumgart misappropriated certain confidential information belonging to Diversified and that constitute trade secrets under the DTSA.

59. Diversified takes reasonable steps to protect the secrecy of its trade secrets and other confidential and proprietary information, including, though not limited to, having employees with access to such information sign confidentiality agreements. Diversified also restricts access to certain of its confidential and proprietary information and trade secrets on a need-to-know basis and requires credentialed log-on to access certain information. Diversified also employs physical security requirements to protect against improper facility access.

60. Baumgart himself recognized in the Agreement that Diversified possesses confidential information that is competitively valuable to Diversified.

61. On information and belief, Diversified's trade secrets have been and will continue to be misappropriated and/or improperly used by Baumgart.

62. On information and belief, Baumgart's violations of the DTSA are willful.

63. There is a genuine and imminent threat that Baumgart will continue to disclose or use Diversified's trade secrets and other proprietary and confidential information to the detriment of Diversified's business and to the benefit of NAU.

64. Diversified has been and will continue to be damaged by Baumgart's misappropriation of Diversified's trade secrets and confidential information, including, without

limitation, lost customers, lost customer relationships, lost revenue, loss of goodwill, reputational injury, and other damages.

65. In these circumstances, Diversified is entitled to an injunction to prevent such irreparable injury. Diversified is also entitled to recover any money damages, including for misconduct that preceded the entry of an injunction.

**COUNT III**

**Misappropriation of Trade Secrets**
**Under R.S.Mo. § 417.450 et seq., the Missouri Uniform Trade Secrets Act ("MUTSA")**

66. Diversified repeats and realleges, as if fully set forth herein, the allegations of Paragraphs 1 through 44 above.

67. Diversified possesses certain trade secrets and confidential information, including, without limitation, Diversified's private risk-management products and systems, information about crop insurance and Diversified's customers, sensitive strategic information about detailed marketing plans, insurance product development, risk analysis, and customer and agent development and retention. These trade secrets and confidential information have actual or potential economic value by virtue of not being generally known and not being readily ascertainable. Baumgart is familiar with these trade secrets and confidential and proprietary information by virtue of his employment at Diversified, and, thus, has a statutory duty under the MUTSA not to disclose or use this information outside of his role at Diversified.

68. On information and belief, Baumgart misappropriated certain confidential information belonging to Diversified and that constitute trade secrets.

69. Diversified takes reasonable steps to protect the secrecy of its trade secrets and other confidential and proprietary information, including, though not limited to, having employees with access to such information sign confidentiality agreements. Diversified also restricts access

13

to certain of its confidential and proprietary information and trade secrets on a need-to-know basis and requires credentialed log-on to access certain information. Diversified also employs physical security requirements to protect against improper facility access.

70. Baumgart himself recognized in the Agreement that Diversified possesses confidential information that is competitively valuable to Diversified.

71. On information and belief, Diversified's trade secrets have been and will continue to be misappropriated and or improperly used by Baumgart.

72. On information and belief, Baumgart's violations of the MUTSA are willful.

73. There is a genuine and imminent threat that Baumgart will continue to disclose or use Diversified's trade secrets and other proprietary and confidential information to the detriment of Diversified's business and to the benefit of NAU.

74. Diversified has been and will continue to be damaged by Baumgart's misappropriation of Diversified's trade secrets and confidential information, including, without limitation, lost customers, lost customer relationships, lost revenue, loss of goodwill, reputational injury, and other damages

75. In these circumstances, Diversified is entitled to an injunction to prevent such irreparable injury. Diversified is also entitled to recover any money damages, including for misconduct that preceded the entry of an injunction.

## COUNT IV

### Breach of Fiduciary Duty

76. Diversified repeats and realleges, as if fully set forth herein, the allegations of paragraphs 1 through 44 above.

77. As an employee of Diversified up to and including January 24, 2020, Baumgart owed Diversified fiduciary duties, including, without limitation, the duties of loyalty and good faith.

78. Baumgart breached his fiduciary duties to Diversified by the conduct alleged herein, including, but not limited, to by acting in concert with three other Diversified employees and persons affiliated with NAU to plot the Diversified employees' departure from Diversified and to work on behalf of direct competitor of Diversified, NAU Country Insurance Company ("NAU").

79. Baumgart further breached his fiduciary duty when he performed a factory reset of his Microsoft Surface laptop issued to him for use as an employee of Diversified, destroying all locally stored Diversified documents and information on the device.

80. Baumgart's actions caused harm to Diversified both as economic damages and lost customer goodwill.

81. Diversified has been and/or will be damaged by Baumgart's breaches, including, without limitation, lost customers, lost customer relationships, lost revenue, loss of goodwill, reputational injury, and other damages.

82. In these circumstances, Diversified is entitled to an injunction to prevent such irreparable injury. Diversified is also entitled to recover any money damages, including for misconduct that preceded the entry of an injunction.

83. Diversified also is entitled to compensatory damages of an amount at least equivalent to the compensation paid to Baumgart during his breaches.

**PRAYER FOR RELIEF**

WHEREFORE, Diversified demands judgment seeking relief against Baumgart as follows:

(a) Imposing a preliminary, and permanent injunction ordering Baumgart to refrain from: (i) directly or indirectly soliciting for competitive business purposes any current or former Diversified customer prior to the expiration of the one-year, non-solicitation period on January 25, 2021; (iii) directly or indirectly providing services to or in connection with any current or former Diversified customer with whom Baumgart had contact or about whom he had access to confidential information and/or trade secrets prior to the expiration of the one-year, non-solicitation period on January 25, 2021; (iv) working through NAU, or in any other role, that would create a risk of inevitable disclosure of Diversified's trade secrets, prior to the expiration of the one-year, non-competition period on January 25, 2021;

(b) Imposing a preliminary, and permanent injunction ordering Baumgart to refrain from: (i) directly or indirectly using, disclosing, retaining, or otherwise misappropriating any of Diversified's trade secrets and confidential and proprietary information; and (ii) disparaging Diversified or in any way dissuading actual or potential crop insurance customers from doing business with Diversified, or otherwise encouraging any actual or potential crop insurance customer to choose a competitor over Diversified;

(c) Awarding Diversified its attorneys' fees, costs, and disbursements incurred as a result of this action;

(d) Awarding Diversified monetary damages in an amount sufficient to compensate Diversified for Baumgart's breaches of contract;

(e) Awarding Diversified exemplary damages in light of Baumgart's willful behavior; and

(f) Awarding Diversified such further relief as the Court deems just and proper.

Dated: February 11, 2020

Respectfully submitted,

/s/ John Grimm

John Grimm, Local Counsel
EDMO Bar No. 34834MO
**THE LIMBAUGH FIRM**
407 North Kingshighway Street, Suite 400
Cape Girardeau, Mo, 63701
Telephone: (573) 335-3316
Facsimile: (573) 335-0621

Kal K. Shah
Charles B. Leuin
**BENESCH FRIEDLANDER COPLAN & ARONOFF**
333 W. Wacker, Suite 1600
Chicago, Illinois 60606
Telephone: (312) 212-4949
Facsimile: (312) 767-9192

*Attorneys for Plaintiff CGB Diversified Services, Inc.*